**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF OHIO EASTERN DIVISION**

| | |
|---|---|
| LOUISIANA MUNICIPAL POLICE EMPLOYEES' RETIREMENT SYSTEM, On Behalf of Itself and All Others Similarly Situated,<br><br>Plaintiff,<br><br>v.<br><br>MORRY WEISS, ZEV WEISS, JEFFREY WEISS, ELIE WEISS, GARY WEISS, JUDITH WEISS, IRVING I. STONE OVERSIGHT TRUST, IRVING I. STONE LIMITED LIABILITY COMPANY, IRVING I. STONE SUPPORT FOUNDATION, IRVING I. STONE FOUNDATION, and AMERICAN GREETINGS CORPORATION.<br><br>Defendants. | Case No.:<br><br>JUDGE<br><br>CLASS ACTION COMPLAINT<br><br>DEMAND FOR TRIAL BY JURY |

Plaintiff Louisiana Municipal Police Employees' Retirement System ("LAMPERS" or "Plaintiff") on behalf of itself and all other similarly situated public shareholders (the "Class") of American Greetings Corporation (hereafter, "AGC" or "the Company"), by its attorneys, make the following allegations against certain members of the Weiss family, AGC and the members of the AGC Board of Directors in support of Plaintiff's claims.

## SUMMARY OF THE ACTION

1. The family that controls AGC – the Weiss family – has decided to squeeze out the Company's public shareholders so that the family can enjoy all of AGC's future value. Specifically, on September 25, 2012, the Company's Chief Executive Officer ("CEO"), Zev Weiss and his brother, President and Chief Operating Officer ("COO"), Jeffrey Weiss, along with other Weiss family members, related trusts and insiders (collectively, the "Weiss Family"), proposed to the AGC board of directors (the "Board") that they allow the Weiss Family to buy all of the Company's common shares that it does not already own for $17.18 per share (the "Acquisition Proposal" or "Proposed Transaction").

2. As set forth below, the Acquisition Proposal is opportunistic and inadequate, with a per share offer price below the Company's known book value. The Weiss Family wants to buy out the public shareholders at the lowest price and, except for the legal restrictions described below, would force through a deal at will.

3. Under Ohio law, however, the controlling Weiss Family has an obligation to pay a fair price when squeezing out the minority shareholders. Moreover, in order to satisfy the unique "independence" requirement of a provision of the AGC Amended and Restated Articles of Incorporation ("Articles of Incorporation" or "Charter") that applies to conflict deals like the Proposed Transaction, the board members who negotiate and approve a squeeze-out transaction cannot have "any" ties to the family beyond their roles as directors.

4. This case arises because there is no possibility that the special committee recently appointed to consider the Proposed Transaction can satisfy the language of the AGC Charter.

Instead, the only way to achieve a truly fair deal for AGC's public shareholders is if the sham process currently taking place is enjoined, and the Weiss Family is forced to negotiate directly with the Company's shareholders to establish a fair price.

5. The Weiss Family controls 51% of the Company's voting power through its ownership of the Company's Class B shares. Class A common shares of the Company are entitled to one vote per share, and Class B common shares are entitled to ten votes per share. There is no public trading market for the Class B common shares, which are held almost solely by members of the Weiss Family. Together with Class A common shares beneficially owned by them, the Weiss Family owns 51% of the voting power of the Company's outstanding capital stock. Thus, the Weiss Family not only controls the Company's operations, but also dominates the Board and controls its composition.

6. Despite this voting control, however, the Weiss Family only owns about 12% of the Company's total outstanding shares, meaning that the Weiss Family's economic interest in the Company is limited and its Class B shares serve to preserve their control of the Company. Critically, however, the language of the Charter impedes the Weiss Family's ability to monetize their investment because any sale of the Class B shares will result in a conversion to Class A share status. The Weiss Family now seeks to take advantage of their control of the Board by cashing out the Company's public shareholders at a patently inadequate price, so as to acquire all economic value of the Company, as well as voting control.

7. The Weiss Family's September 25 letter to the Board stated that it expected to keep the Company's employee base and AGC current senior management intact. Thus, the Weiss Family has no radical plan for overhauling the Company, but it is simply trying to position itself to reap the entirety of the Company's upside and any future control premium.

8. Almost a month after the Weiss Family presented their lowball takeover price, the Board created a special committee (the "Special Committee") to evaluate the offer. However, this committee is utterly incapable of prioritizing the interest of the Company's minority shareholders ahead of the desires of the Family. For example, the chair of the Special

Committee, in addition to various other conflicts, personally owns Class B shares, thus aligning his interests with the Weiss Family. Other Committee members do business with the Weiss Family or are otherwise unable to act counter to the Weiss Family's desires.

9. The Weiss Family bears the burden of proving that the Proposed Transaction is fair to the public shareholders of AGC. The Acquisition Proposal fails to meet this standard because it provides inadequate consideration to the Class and it is being constructed outside the bounds of the Company's charter documents. Due to the composition of the AGC Board and a pre-existing agreement by the Parties, there is simply no way the Acquisition Proposal can be fairly scrutinized and negotiated on behalf of the Class. This sham process should be enjoined.

## JURISDICTION AND VENUE

10. This Court has original jurisdiction over this action pursuant to 28 U.S.C. § 1332, in that complete diversity exists between Plaintiff and each of the Defendants and the amount in controversy exceeds $5,000,000 exclusive of interests and costs.

11. The Court has personal jurisdiction over each of the Defendants because each either is a corporation that conducts business in this District or is an individual who either is present in Ohio for jurisdictional purposes or has sufficient minimum contacts with this District as to render the exercise of jurisdiction by this Court permissible under traditional notions of fair play and substantial justice.

12. Venue is proper in this District pursuant to 28 U.S.C. §§ 1391(a)(2) and (3) because some or all of the events, actions, and failures to act giving rise to the claims asserted herein occurred in this District, and there is no district in which an action may otherwise be properly brought.

## THE PARTIES

13. LAMPERS is a public pension fund for the benefit of the active and retired police department employees of the state of Louisiana. LAMPERS is authorized to sue on behalf of its

beneficiaries. LAMPERS is a shareholder of AGC, and has been a shareholder of AGC at all material times alleged in this Complaint. LAMPERS is a citizen of Louisiana.

14. Defendant AGC is incorporated under the laws of the State of Ohio and has its headquarters at One American Road, Cleveland, Ohio, 44144.

15. Defendant Jeffrey Weiss is President and COO of the Company, a position he has held since June 1, 2003. From March 2000 until June 1, 2003, Jeffrey Weiss was Executive Vice President, North American Greeting Card Division of the Company. Jeffrey Weiss is the son of Morry Weiss, the Company's Chairman of the Board; the brother of Zev Weiss, a director of the Company and the Company's CEO; and the nephew of Erwin Weiss, the Company's Senior Vice President, Specialty Business. Jeffrey Weiss is a citizen of Ohio.

16. Defendant Zev Weiss joined the Company in 1992 as a sales representative and became CEO of the Company in June 2003. Zev Weiss is the son of Morry Weiss, the Company's Chairman of the Board; the brother of Jeffrey Weiss, and the nephew of Erwin Weiss. Zev Weiss is a citizen of Ohio.

17. Defendant Morry Weiss currently serves as chairman of the Board. He joined the Company in 1961 and had various responsibilities with the Company, including Group Vice President of Sales, Marketing and Creative. Morry Weiss is the father of Zev and Jeffrey Weiss, and brother of Erwin Weiss. He has been a director of the Company since 1971. Morry Weiss is a citizen of Ohio. Morry Weiss also maintains a residence in Florida.

18. Defendant Judith Weiss is the wife of defendant Morry Weiss. Judith Weiss beneficially owns 78,800 Class B Shares. Judith Weiss is a citizen of Florida.

19. Defendant Irving I. Stone Oversight Trust (the "Oversight Trust") is located in Cleveland, Ohio and was created to manage the business and affairs of Stone LLC upon the Weiss Family's ascendant Irving Stone's death. The Oversight Trust is governed by its four trustees, defendants Zev, Jeffrey, Gary and Elie Weiss.

20. Defendant Irving I. Stone Support Foundation (the "Support Foundation") is a foundation incorporated and organized in the state of Ohio, and located in Beachwood, Ohio.

The Support Foundation owns approximately 200,000 Class B Shares. Defendants Morry, Zev, Jeffrey, Gary, and Elie Weiss are trustees of the Support Foundation.

21. Defendant Irving I. Stone Foundation (the "Stone Foundation") is a foundation incorporated and organized in the state of Ohio and located in Cleveland, Ohio. The Stone Foundation owns approximately 203,964 Class B Shares. Defendants Morry, Zev, Jeffrey, Gary and Elie Weiss are trustees of the Stone Foundation.

22. Defendant Irving I. Stone Limited Liability Company ("Stone LLC") is an Ohio limited liability company formed primarily as a vehicle to facilitate the business and estate planning goals of the late Irving I. Stone ("Stone"). Stone held 98% of the membership interest in Stone LLC until his death in 2000. In 2006, this 98% membership interest was sold to defendants Zev, Jeffrey, Gary and Elie Weiss, and as a result of that transaction defendants Zev, Jeffrey, Gary and Elie Weiss each now hold membership interests representing 24.5% of the equity of Stone LLC. The remaining 2% membership interest in Stone LLC is held in equal parts by Judith Stone Weiss, Stone's daughter, and the Oversight Trust. According to the Company's public filings, Stone LLC beneficially owns and has the sole power to vote and dispose of 1,818,182 Class B Shares and Stone LLC is expected to reinvest or rollover all or substantially all of its Class B Shares in the Company following the Proposed Transaction.

23. The defendants named above in paragraphs 15-22 are referred to collectively herein as the "Weiss Family Defendants". By reason of their positions as members of the controlling shareholder group, the members of the Weiss Family owe fiduciary duties to AGC and its shareholders, including the obligations of loyalty, good faith, fair dealing, and due care.

## **FACTUAL BACKGROUND**

***Background of the Company and Weiss Family Control***

24. In 1906, Polish immigrant Jacob Sapirstein founded the Company. Today, his descendants, the Weiss Family, operate the Company predominantly in a single industry: the design, manufacture and sale of everyday and seasonal greeting cards and other social expression

products. AGC manufactures or sells greeting cards, gift packaging, party goods, stationery and giftware throughout the world. AGC also engages in design and character licensing and the manufacture of custom display fixtures for AGC products and products of other companies and businesses. As of February 29, 2012, AGC employed approximately 8,200 full-time employees and approximately 19,300 part-time employees which, when jointly considered, equate to approximately 17,900 full-time equivalent employees.

25. The Company operates in an extremely competitive environment because an estimated 3,000 greeting card publishers exist in the United States, ranging from small family-run organizations to major corporations.

26. Through a dual-class structure, the Weiss Family controls 51% of the AGC shareholder voting power. AGC authorized capital stock consists of Class A common shares and Class B common shares. The economic rights of each class of common shares are identical, but the voting rights differ. Class A common shares are entitled to one vote per share and Class B common shares are entitled to ten votes per share. There is no public trading market for the Class B common shares, which are held almost solely by the Weiss Family.

27. As of April 27, 2012, Morry Weiss, Zev Weiss, Jeffrey Weiss and Erwin Weiss, together with other members of the Weiss Family and certain trusts and foundations established by the Weiss Family beneficially owned approximately 94% in the aggregate of the outstanding Class B common shares. This equity interest, together with the Class A common shares beneficially owned by the Weiss Family, represents approximately 51% of the voting power of AGC outstanding capital stock.

28. In the Company's annual report, AGC concedes as follows:

> Accordingly, these members of the Weiss family, together with the trusts and foundations established by them, would be able to significantly influence the outcome of shareholder votes, including votes concerning the election of directors, the adoption or amendment of provisions in our Articles of Incorporation or Code of Regulations, and the approval of mergers and other significant corporate transactions, and their interests may not be aligned with your

> interests. The existence of these levels of ownership concentrated in a few persons makes it less likely that any other shareholder will be able to affect our management or strategic direction. These factors may also have the effect of delaying or preventing a change in our management or voting control or its acquisition by a third party.

29. Nevertheless, the Company and its public shareholders are entitled to protection from an unwanted change in control, as is articulated in part in the Company's Articles of Incorporation. Specifically, the Weiss Family may not transfer or sell its Class B shares to a third party unless the family first offers such shares to the Company for purchase at the most recent closing price for AGC Class A common shares. If the Company refuses to purchase the Class B shares, the shares must be converted to Class A shares on a one to one basis in order for the Family to effectuate any transfer. Essentially, the Articles of Incorporation were written to prevent the Weiss Family from receiving additional value for their Class B shares.

***The Acquisition Proposal***

30. On September 25, 2012, the Board received a letter from the Weiss Family offering $17.18 per Class A share for each share the Weiss Family did not already own. This Acquisition Proposal valued the Company at approximately $581 million.

31. The $17.18 offer price is considered below fair value by a number of measures and investors. The Company's stock has traded above the offer price this year, and the Company's book value is estimated at roughly $20 per share – about 15% above the offer price of the Proposed Transaction. As one analyst commenting on the Proposed Transaction put it, "It is unreasonable to sell a company that has stable business and minimum capital expenditure below the book value, especially to the company's senior management." The Company's Class A shares were trading above $20 as recently as last year.

32. Further, the Company recently received a lucrative tax abatement relating to AGC's move to its new headquarters in Westlake, Ohio. Under the abatement deal struck in December 2011 with Westlake's City council, AGC will pay no taxes on the increased value of their property for 30 years among other benefits. This extraordinary abatement will begin in

2014, and will undoubtedly make the Company more valuable. The Weiss Family plans to be the sole beneficiaries of this cost savings after cashing out the remaining Class A shareholders and ridding themselves of the transfer restrictions imposed by the Articles of Incorporation.

33. Recognizing value embedded in the Company's equity that is not accounted for in the Acquisition Proposal, two large investors increased their respective stakes in the AGC to above 5% after the Weiss Family made its takeover intentions known. TowerView LLC, a prominent New York investment firm, notified the Securities and Exchange Commission ("SEC") in a 13D filing on October 3, 2012 that it had increased its stake in AGC to 1.45 million Class A shares, or 5% of the Class A stock outstanding. In an October 26, 2012, filing with the SEC, prominent investor Dawson Investments LLC of Michigan reported that it had acquired 1,580,614 shares, or 5.49%, of AGC's Class A stock as of October 23.

34. The discount offer price reflects the Weiss Family's intent to gain complete control of the Company at a grossly unfair price, while they will free themselves from the constraints of the Articles of Incorporation. Unfortunately for shareholders, the Special Committee created to examine the Acquisition Proposal and negotiate with the Weiss Family is indisputably conflicted.

***The Special Committee Is Conflicted and Violates the Articles of Incorporation***

35. Though the Company announced its intention to form a special committee when it disclosed the September 25 letter, it did not do so until October 19.

36. On that day, the Company announced that the Board had formed the Special Committee. The Special Committee was charged with consideration of the Acquisition Proposal proffered by the Weiss Family on September 25, as well as the review of other of the Company's strategic alternatives. However, the construct of the Special Committee renders it conflicted and in violation of the Articles of Incorporation.

37. The Special Committee members are Scott S. Cowen (chairman), William MacDonald, Michael J. Merriman, and Jeffrey D. Dunn. As explained below, each of these individuals suffers from a debilitating conflict of interest and is incapable of unbiased and

earnest negotiation on behalf of the Company's public shareholders. These conflicts not only run afoul of notions of fairness, they also put the construct of the Special Committee at odds with the Articles of Incorporation. Specifically, the Articles of Incorporation provide that:

> No contract or other transaction entered into by the Corporation shall be affected by the fact that any Director of the Corporation is in any way interested in, or connected with, any party to such contract or transaction, or himself is a party to such contract or transaction, provided that such contract or transaction shall be approved by a majority of the Directors present at the meeting of the Board or of the Committee authorizing or confirming such contract or transaction, which majority shall consist of Directors not so interested or connected.

38. In other words, in any case where any director is "in any way interested in" a transaction with the Company, such transaction is only valid if approved by a majority of directors who are not themselves interested in the transaction and are not "connected with, any party to such contract or transaction…".

39. There is no possible combination of Board members that could be presumed disinterested or able to place the interests of the AGC pubic shareholders above those of the Weiss Family. Indeed, each of the Company's Board members either serves at the behest of the Weiss Family, or enjoys a close personal or professional relationship with them. Thus, the construct and charge of the Special Committee is a violation of the Articles of Incorporation.

40. In this regard, director and Special Committee chairman Scott Cowen is wholly inappropriate to serve on the Special Committee, let alone serve as its chair. Cowen owns almost 2,000 deferred Class B shares, according to the Company's latest annual proxy statement. This equity interest aligns him with members of the Weiss Family who seek to rid themselves of the transfer restrictions in the Articles of Incorporation. In addition, Cowen sits on the board of fellow director Ratner's company, Forest City, which does significant business with the Weiss Family and AGC.

41. Further, AGC has disclosed in public filings that it has made charitable contributions to organizations where Cowen has served in a leadership capacity, and the

Company made at least one matching contribution of $10,000 to an organization on behalf of Cowen. Consequently, Cowen is conflicted for purposes of his service on the Special Committee.

42. Director and Special Committee member MacDonald has longstanding ties to Morry Weiss. MacDonald was the Vice Chairman of National City Corporation ("National City"). Morry Weiss was a long-time director of National City until the company was sold to PNC in 2008. MacDonald also sits on the board of the Cleveland Clinic Foundation with Morry Weiss. Additionally, the Company made discretionary charitable contributions to charities and non-profits where MacDonald has served an executive officer, director and/or trustee.

43. AGC has also made matching contributions of $10,000 to certain charities and non-profits on behalf of director MacDonald. In light of MacDonald's enduring personal and professional relationship with Morry Weiss and the Weiss Family, he is incapable of disinterested and unbiased service on the Special Committee.

44. Director Merriman, another member of the Special Committee, was previously considered lacking independence under the New York Stock Exchange standards due to his years of service for the Company. The Company has also made discretionary charitable contributions to organizations Merriman serves or has served as an executive officer, director and/or trustee. In addition, AGC has made matching contributions of $10,000 to organizations on behalf of Merriman.

45. Director and Special Committee member Dunn also has longstanding business ties to AGC and the Weiss Family. Dunn is the Former President and CEO of HIT Entertainment Limited ("HIT"), where he served from 2008 until HIT was sold in 2012. Prior to the sale, Dunn held a 5% equity stake in HIT. As acknowledged in AGC's public filings, from 2008 through 2012, during the time that he was both CEO and a 5% equity stakeholder in HIT and a director of AGC, the Company licensed certain character properties from HIT in the ordinary course of its business. The Company's public filings do not disclose how much money

AGC paid to HIT, but the years of business suggest a significant sum suitable to question Dunn's independence from the Weiss Family.

46. Thus, the entirety of the Special Committee is marred by the types of professional and personal relationships that are generally accepted indicators of a lack of independence. In addition, the other two members of the Board are also conflicted and provide little hope for the Company's public shareholders' ability to preserve their right to fair price for their investment in the Company.

47. Director Ratner, like Cowen, is the owner of deferred Class B shares, aligning his interests with the Weiss Family. Ratner is also executive chairman and a greater than 10% shareholder of Forest City Enterprises, Inc., whose operating subsidiary rents retail space pursuant to lease agreements to the Company. Ratner and the Weiss Family have partnered on real estate ventures in Ohio and elsewhere for a number of years.

48. Ratner also has a 10% indirect ownership interest in a shopping mall that leased retail space to the Company. Currently, a subsidiary of Forest City rents retail store space in various shopping malls to AGC. The Company also sold its retail store operations to Schuman Fine Papers in April 2009, and since the time of the sale, AGC has subleased or assigned the retail store locations to Schuman Fine Papers. In addition, Ratner has a 10% indirect ownership interest, through a trust, in a Cleveland, Ohio shopping mall that leased space to the Company for a retail store, which is now under sublease to Schuman Fine Papers. Ratner's various business dealings with AGC and the Weiss Family render him a conflicted member of the Board for the purposes of evaluating the Proposed Transaction.

49. Director Jerry Sue Thornton is a member of the board of directors of Applied Industrial Technologies, Inc., a company from which AGC purchases products and services in the ordinary course of business. Thornton is also the President of Cuyahoga Community College and serves on a host of Cleveland-area non-profits. The Weiss Family has curried favor with Thornton, as they have Cowen, by causing AGC to make various "discretionary contributions" to organizations associated with Thornton.

**CLASS ACTION ALLEGATIONS**

50. Plaintiff brings these claims as class claims, pursuant to Federal Rule of Civil Procedure 23, on behalf of itself and all other persons who owned common stock as of the date hereof and who will have their AGC shares acquired by the Weiss Family and were damaged thereby, individually and on behalf of all other stockholders of the Company (except the Defendants herein and any persons, firm, trust, corporation, or other entity related to or affiliated with them and their successors in interest), who are threatened with injury arising from Defendants' actions, as more fully described herein (the "Class").

51. This action is properly maintainable as a class action for the following reasons:

a) The Class is so numerous that joinder of all members is impracticable. As of October 1, 2012 there were over 28 million outstanding Class A shares of AGC.

b) Plaintiff is committed to prosecuting this action and has retained competent counsel experienced in litigation of this nature. Plaintiff's claims are typical of the claims of the other members of the Class and Plaintiff has the same interests as the other members of the Class. Accordingly, Plaintiff is adequately representative of the Class and will fairly and adequately protect the interests of the Class.

c) The prosecution of separate actions by individual members of the Class would create the risk of inconsistent or varying adjudications with respect to individual members of the Class, which would establish incompatible standards of conduct for defendants, or adjudications with respect to individual members of the Class which would, as a practical matter, be dispositive of the interests of the other members not parties to the adjudications or substantially impair or impede their ability to protect their interests.

d) Preliminary and final injunctive relief on behalf of the Class as a whole is appropriate because Defendants have acted, or refused to act, on grounds generally applicable and causing injury to the Class.

52. There are questions of law and fact which are common to the Class and which predominate over questions affecting any individual class member. The common questions include, *inter alia*, the following:

a) Whether the Weiss Family has engaged and is continuing to engage in a plan and scheme to benefit the Weiss Family at the expense of the members of the Class;

b) Whether the Weiss Family, as majority shareholder of AGC, has fulfilled, and is capable of fulfilling, its fiduciary duties to Plaintiff and the other members of the Class, including its duties of entire fairness, fair dealing, loyalty, due care, and candor;

c) Whether composition of the Special Committee violates the Articles of Incorporation;

d) Whether the Proposed Transaction is entirely fair to the members of the Class;

e) Whether the Weiss Family and the Company have disclosed all material facts in connection with the Proposed Transaction; and

f) Whether Plaintiffs and the other members of the Class would be irreparably damaged if the Weiss Family and the Company are not enjoined from effectuating the conduct described herein.

**FIRST CAUSE OF ACTION**

**(For Breach Of Fiduciary Duty Against the Weiss Family Defendants As Controlling Shareholder)**

53. Because the Weiss Family Defendants control AGC and stands on both sides of the Proposed Transaction, it is subject to the requirements of entire fairness. The Proposed Transaction, however, fails to meet that standard's rigorous requirements. To that end, the Weiss Family Defendants are required to, but cannot, demonstrate the entire fairness of the Proposed Transaction because, among other things: (a) the Weiss Family Defendants are on both sides of the transaction; (b) the Weiss Family Defendants will receive enormous benefits as a result of the Proposed Transaction significantly in excess of that to be received by the Company's minority shareholders; (c) the Proposed Transaction calls for the payment of a price that is less than supported, and (d) the Proposed Transaction does not provide for any sort of meaningful procedural protections for the Company's public shareholders.

54. The Weiss Family Defendants have not expressed their willingness to condition the Proposed Transaction on the affirmative vote in its favor by a majority of the minority shareholders. Absent this and other critical procedural protections, the Company's public shareholders are left with no meaningful choice as to the disposition of their shares. Given the fact that the Weiss Family controls AGC and the Board, the absence of a majority of the minority protection, and the low price per share, shareholders stand no chance of receiving fair value for their shares.

55. The unfairness of the terms of the Proposed Transaction is compounded by the gross disparity between the knowledge and information possessed by the Weiss Family by virtue of their positions of control of AGC and that possessed by the Company's public shareholders and the market.

56. By reason of the foregoing, the Weiss Family Defendants have breached and will continue to breach their fiduciary duties owed to the public shareholders of AGC, and are

engaging in, or facilitating the accomplishment of, an unfair and self-interested transaction that is not entirely fair to the public shareholders of AGC. The remaining AGC directors are unable or unwilling to protect the rights of AGC's public shareholders because doing so would require them to take positions adverse to the interests of the Weiss Family.

57. The AGC shareholders have no adequate remedy at law.

## SECOND CAUSE OF ACTION

**(Against the Company for Declaratory Relief Related to the Special Committee and the Purportedly "Independent" Members of the Board)**

58. Plaintiffs repeat and reallege each and every allegation above as if set forth in full herein.

59. The Weiss Family Defendants have proposed a self-interested transaction to the Company's Board through which the Weiss Family Defendants will acquire the minority shareholders' interests in the Company.

60. According to the Company's press release on October 19, 2012, the Company formed a Special Committee consisting of four putatively "independent" directors to "consider" the Weiss Family Defendants' proposal.

61. At least three members, and seemingly all four members of the Special Committee have connections with one or more of the Weiss Family that renders the Special Committee incapable of authorizing, confirming, or approving a transaction such as the Proposed Transaction. The other purportedly independent directors likewise have connections with one or more member of the Weiss Family.

62. The Weiss Family Defendants and the AGC Directors have breached their fiduciary duties by failing to fully disclose the circumstances and procedures of the Acquisition Proposal.

63. The Company's Articles of Incorporation constitute a contract between the Company and its shareholders.

64. Plaintiff and the Class have standing to enforce the provisions of the Articles.

65. The provisions of the Articles of Incorporation require that a majority of the Board members that will purport to approve, authorize or confirm a going-private transaction with the Weiss Family have no connection "in any way" to "any" of the Weiss Family.

66. As set forth above, at least three of the four members of the Special Committee have connections to one or more of the Weiss Family as do the two other non-Weiss members of the Board.

67. Pursuant to the provisions of the Articles of Incorporation, the Special Committee, or any other group of Company directors asked to authorize the Proposed Transaction, cannot consist of a majority of "Directors …[in any way] connected" with "any" of the Weiss Family.

68. Therefore, the Special Committee, or any other group of Company directors, is incapable under the Articles of Incorporation of approving, by majority vote, any going-private transaction such as that contemplated in the Proposed Transaction.

69. Plaintiff seeks a declaration from the Court that the Special Committee and the Board is incapable of approving, authorizing or confirming, in accordance with the Articles of Incorporation, a transaction with the Weiss Family such as the going-private transaction contemplated by the Proposed Transaction.

70. Plaintiff further seeks a declaration from the Court that the Company's Board, as currently constituted, is incapable of forming a committee comprising a majority of disinterested and non-connected directors under the Articles of Incorporation to authorize or confirm a transaction with the Weiss Family such as the going-private transaction contemplated by the Proposed Transaction.

71. Injunctive, declaratory and other equitable relief is appropriate to compel the Company's adherence to the Articles of Incorporation's contractual dictates.

72. Absent equitable relief, Plaintiff and the Class will suffer irreparable harm.

## RELIEF REQUESTED

**WHEREFORE,** Plaintiff demands judgment as follows:

(a) Declaring this Action properly maintainable as a class action;

(b) Preliminarily and permanently enjoining AGC and the Weiss Family Defendants from taking any action to consummate the Proposed Transaction until a truly independent special committee is established in accordance with the prescriptions of the Articles of Incorporation to conduct genuine arms-length negotiations with the Weiss Family or any other prospective buyer;

(c) Declaring that the Proposed Transaction represents a breach of the Weiss Family Defendants' fiduciary duties, including duties of loyalty and entire fairness, as the Company's controlling shareholder;

(d) Declaring the meaning, interpretation and applicability of the Articles of Incorporation with respect to the Special Committee and any committee or group of Company directors formed for the purposes of approving any transaction with the Weiss Family such as the going-private transaction contemplated by the Proposed Transaction;

(e) Declaring that the Special Committee and the Board are incapable under the Articles of Incorporation of approving the Weiss Family Defendants' Proposed Transaction or any similar going-private transaction involving the Weiss Family;

(f) Enjoining Defendants from proceeding with the Proposed Transaction or any other acquisition negotiated between the Board and the Weiss Family without ensuring compliance with the Articles of Incorporation;

(g) Declaring invalid and unenforceable any disclosed or undisclosed agreements between the Company and the Weiss Family Defendants with respect to the Proposed Transaction;

(h) A declaration that the Weiss Family Defendants have breached their fiduciary duties to the Class;

(i) Awarding Plaintiff the costs and disbursements of this action, including attorneys', accountants', and experts' fees; and

(j) Awarding such other and further relief as is just and equitable.

**JURY DEMAND**

Plaintiff demands a trial by jury on all claims so triable.

DATED: November 9, 2012

Respectfully submitted,

/s/ Joel Levin

Joel Levin (0010671)
Aparesh Paul (0077119)
**LEVIN & ASSOCIATES CO., L.P.A.**
The Tower at Erieview, Suite 1100
1301 East 9th Street
Cleveland, Ohio 44114
(216) 928-0600
(216) 928-0016

**BERNSTEIN LITOWITZ BERGER & GROSSMANN LLP**
Mark Lebovitch
Amy Miller
Jeremy Friedman
1285 Avenue of the Americas
New York, NY 10019
Phone: (212) 554-1400
Fax: (212) 554-14444

*Counsel for Plaintiff*